IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TITUS HENDERSON,

                Plaintiff,

    v.

CATHY A. JESS, TIM HAINES, L.R. IVERSON,
VICKI SEBASTAIN, PETER HUIBREGTSE,
T. OVERBO, CHAPLAIN EWING, G. BOUGHTON,
A. BROADBENT, and CO II BARTELS,

                Defendants.

OPINION and ORDER

18-cv-680-jdp

---

Plaintiff Titus Henderson, appearing pro se, alleges that prison officials discriminated against him as an African American and as a Muslim by denying him religious meals and property, and that he suffered adverse health consequences from the denial of meals. He brings claims under the First Amendment, Eighth Amendment, Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act.

Defendants have filed a motion for partial summary judgment on exhaustion grounds, Dkt. 24, and Henderson has filed several motions asking for sanctions against defendants for interfering with his ability to file submissions and for destroying grievance materials. I will grant defendants' motion for summary judgment in most respects and deny Henderson's motions for sanctions. I will reset the schedule for the parties to resolve Henderson's remaining claims.

A. Preliminary matters

Before filing his response to defendants' exhaustion-based summary judgment motion, Henderson filed a motion for extension of time to file his response. Dkt. 32. I'll grant that motion.

In addition to his substantive response, Henderson also filed a motion asking for the court to deny the motion for summary judgment because defendants did not follow court procedures by supporting the motion with proposed findings of fact. Dkt. 42. But as Magistrate Judge Stephen Crocker explained in the court's preliminary pretrial conference order, parties do not need to follow the court's usual summary judgment rules for exhaustion-based motions for summary judgment. Dkt. 18, at 4–5. Defendants have followed the rules for filing this type of summary judgment motion, so I will deny Henderson's motion to deny the summary judgment motion.

In his substantive summary judgment response and in several other motions, Henderson alleges that opposing counsel has ordered prison staff to destroy exhaustion-related evidence and that counsel and prison staff have interfered with his ability to file documents in this case by placing him on a rubber-pencil or crayon restriction making him ineligible to use the court's e-filing system. *See* Dkt. 33; Dkt. 35; Dkt. 43; Dkt. 45; Dkt. 49. He seeks default judgment in his favor or other sanctions and he asks for a hearing. Henderson says that he "has documents, e-mails, and testimony" showing that counsel directed staff "to confiscate evidence for sole purpose of preventing interference with Court decision." Dkt. 49, at 1–2. But Henderson does not attach that evidence to any of his motions. Without evidence of malicious intent on behalf of counsel or prison staff, I see no need to conduct further proceedings into the matter, particularly because he has not been harmed by any of the alleged misconduct.

In their summary judgment materials, defendants say that grievance records are destroyed after seven years under the DOC's document-retention policy, so they retain few pre-2012 grievances. Many of the grievances discussed by the parties are more than seven years old, and for almost all of those grievances, the parties do not provide documentation of the

grievance proceedings. As I explain below, the destruction of grievance materials ultimately works against defendants, because it is their burden to show that Henderson failed to exhaust his remedies. If they cannot produce evidence showing the details of Henderson's various grievances, they have nothing to rebut Henderson's sworn statements that he discussed certain issues in his now-destroyed grievances.

As for the alleged interference with Henderson's ability to file documents to this court, Henderson was able to file a summary judgment response and several other filings. It appears that some of those filings were prepared in pencil or crayon and mailed to the court, and other, more recent documents were indeed e-filed. Henderson was able to submit dozens of pages of exhibits, and as I explained above, the destruction of certain grievance materials works against defendants' motion for summary judgment, not for it. In short, Henderson doesn't show that his ability to file documents has been meaningfully limited by prison staff. Because Henderson doesn't properly support his sanctions motions or show that he was harmed by the alleged misconduct, I will deny his various motions for sanctions.

Henderson also asks for a hearing under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), to resolve the exhaustion motion. Dkt. 48. But because the exhaustion question does not boil down to disputed issues of material fact with regard to any of his claims, I will deny that motion.

## B. Exhaustion

Defendants seek partial summary judgment, contending that Henderson failed to exhaust his administrative remedies for most of his claims.

Under the Prison Litigation Reform Act, prisoners must exhaust all available administrative remedies before filing a lawsuit in federal court about prison conditions.

3

42 U.S.C. § 1997e(a). To comply with 1997e(a), a prisoner must take each step within the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code ch. DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

### 1. Reading materials

Henderson alleges that defendant Jess barred him from possessing Islamic reading materials while he was in segregation. Henderson is a prolific grievance filer: according to the grievance history provided by defendants, Dkt. 28-7, Henderson has filed several hundred grievances since 2006. But defendants contend that Henderson didn't file any grievances about the reading-material ban. Defendants also contend that even prior to filing a grievance about the issue, he should have first filled out a DOC-2075 "Request for New Religious Practice of Property" form, asking to change the religious property rules. *See, e.g.*, *Schlemm v. Frank*, No. 11-cv-272-wmc, 2014 WL 2591879, at *9 (W.D. Wis. June 10, 2014) ("exhaustion of the DOC-2075 procedure is required in order to give prison officials the opportunity to develop a record regarding an inmate's request for religious accommodations.").

Henderson produces a grievance decision, No. WSPF-2008-11443, that shows that he did challenge a ban on "personal" books on segregation; that ruling stated that inmates in segregation were limited to "a Bible or other religious text, a dictionary, and two puzzle books," and two books checked out from the library. *See* Dkt. 34, at 4. This grievance appears to have been fully exhausted through the appeal process. I take Henderson to be saying that he exhausted a claim about religious books because he lost his grievance about *all* personal books. But there's no indication that this broad grievance alerted prison staff to nature of the problem that Henderson now complains about: that his religious exercise was burdened by a religious-book restriction. And Henderson failed to follow the first step in grieving a religious-property deprivation: he did not file a DOC-2075 form to change a religious practice or property policy. So I conclude that he failed to properly exhaust his claims about Islamic reading materials, and I'll grant defendants' motion for summary judgment on those claims. That dismissal will be without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). Although the dismissal is without prejudice, Henderson likely will not be able to exhaust his claims because any future grievance would be untimely.

### 2. Prayer oil

Henderson alleges that prison officials denied him prayer oil during Ramadan months from 2010 to 2014. Defendants contend that the only grievance that Henderson filed about prayer oil was a 2016 grievance, No. WCI-2016-6744, that postdated the events of his complaint and that he did not fully exhaust. *See* Dkt. 28-2. Defendants also contend that Henderson should have filed a DOC-2075 request form before filing a grievance. Henderson says that he did file grievances about prayer oil and also appealed conduct reports he received

related to him possessing prayer oil. He also says that he was not required to file a DOC-2075 form about prayer oil because prison policy allowed him to have it.

In their reply, defendants don't explicitly concede that Henderson was already allowed prayer oil under the DOC policies, but they don't press the DOC-2075 issue further, and they fail to provide evidence showing that Henderson was indeed required to request a change in prison policy to receive prayer oil. So Henderson's failure to file a DOC-2075 form does not pose a problem for this claim.

That leaves defendants' argument that Henderson didn't properly exhaust a grievance about the prayer oil. Henderson says that from 2003 to 2015, he filed numerous grievances about deprivation of prayer oil, and when he was punished for seeking prayer oil, he defended himself in disciplinary hearings related to those deprivations. *See* Wis. Admin. Code DOC § 310.08 (2006) (inmate must raise substantive issues about disciplinary hearing in the hearing, not in grievance).[1] The attachments that Henderson includes about some of those grievances or disciplinary hearings are not complete records of the proceedings, so it is not clear precisely what issues Henderson raised in those proceedings. And some of the filings that Henderson says he made predate the grievance history report provided by defendants, so there is no available written record of those proceedings.

But the burden is on *defendants* to prove that Henderson failed to exhaust his claim about prayer-oil deprivation. They say that most of their records from before 2012 have been destroyed under their seven-year records-retention schedule. The absence of those records is a

---

[1] The Wisconsin Administrative Code provisions outlining the inmate-grievance process were revised in 2018. I will refer to the version of the code in effect before that revision.

problem for defendants, because they can't produce them to rebut Henderson's statements that he did raise the prayer-oil issue in his grievances.

Defendants say that older grievances could not have exhausted his claims because the statute of limitations would have run on older claims. But the statute of limitations for claims about pre-2010 deprivations has nothing to do with exhaustion; the relevant question is whether older grievances could have exhausted the claims at issue here, for deprivations from 2010 to 2014. "Prisoners need not file multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." *Turley v. Rednour,* 729 F.3d 645, 650 (7th Cir. 2013). Defendants argue that each deprivation at issue here was a discrete event and so Henderson had to exhaust each year. But he alleges that defendants enacted policies that deprived him of prayer oil every Ramadan season, so he plausibly alleges a several-years-long continuing violation of his rights that does not need individualized exhaustion for every instance. Because defendants fail in their burden to show that Henderson failed to exhaust his prayer-oil claims, I will deny their summary judgment motion on these claims.

### 3. Ramadan meals generally

Henderson alleges that defendants deprived him of Ramadan meals over parts of each season from 2010 to 2014, for various reasons. Defendants concede that Henderson has exhausted his claims about Ramadan deprivations in 2010 and 2012, because he properly exhausted a grievance about defendants Overbo and Broadbent canceling his meals in 2010, and because a grievance he filed in 2012 was incorrectly rejected.

As for the 2011, 2013, and 2014 denials, Henderson lists several grievances that he filed during those years. Dkt. 35, at 11. But the records provided by defendants show that

Henderson failed to properly exhaust any of them; one of his grievances was rejected for failing to include enough facts and the others were not appealed all the way through the system.

Henderson says that his failure to exhaust should be excused because prison staff wouldn't extend his legal loan to give him postage to mail his appeal, rendering the grievance process unavailable to him. He cites *Cordova v. Frank*, No. 07-cv-172-bbc, 2007 WL 2188587 (W.D. Wis. July 26, 2007), for the proposition that the state can't withhold legal loans for grievance appeals and then turn around and argue that the prisoner failed to fully exhaust his grievance by failing to mail the appeal. *Id.* at *6. The problem for Henderson is that the *Cordova* plaintiff ultimately lost the exhaustion issue because he indeed later regained the ability to mail the appeal—he received weekly free postage under prison policy— but when he filed his appeal, he did not inform the corrections complaint examiner that the legal-loan problem caused his appeal to be late. *Id.* The same free-postage-per-week policy applied during Henderson's time, and he does not explain why he couldn't appeal his grievances using that resource. So I conclude that he failed to fully exhaust his Ramadan-meal claims for 2011, 2013, and 2014.

### 4. Vegan halal meals for Ramadan

Henderson brings Eighth Amendment claims, alleging that he was denied vegan halal meals during Ramadan in 2013 and 2014; he needed those meals at least in part because he suffered from gastroesophageal reflux disease. Defendants contend that he didn't properly exhaust any grievances about the issue; they say that Henderson didn't appeal a dismissed grievance about 2014 Ramadan meals, No. WSPF-2014-14621. *See* Dkt. 38-1. They also argue that Henderson didn't file a DOC-2075 form requesting a change to the Ramadan meal rules.

As with the prayer-oil issue, defendants' DOC-2075 argument goes nowhere. I do not take Henderson to be saying that his problem was with a policy about how the vegan halal

meals are provided, but rather that defendants failed to follow existing policy by letting him have them.

Henderson says that he first requested vegan meals in 2010. But he doesn't say that he filed a grievance about the issue then. He contends that the '14621 grievance exhausts at least a portion of his vegan-halal-meal claims, even though he didn't appeal it; he again says that prison staff wouldn't extend his legal loan to give him postage to mail his appeal, rendering the grievance process unavailable to him. But as I stated above regarding his more general Ramadan meal claims, Henderson does not show that the denial of legal loans actually deprived him of the ability to file appeals, given the prison's free-postage-per-week policy. So I conclude that he failed to fully exhaust his vegan-halal-meal claims.

### 5. Equal protection

Each of Henderson's surviving claims includes a theory that defendants' actions violated his rights under the Equal Protection Clause to the Fourteenth Amendment by treating African-American and Muslim prisoners worse than others, or alternatively under a "class of one" theory that he was singled out for mistreatment. Defendants contend that each equal protection claim should be dismissed for Henderson's failure to exhaust it, with the exception of his 2010 Ramadan-meal claim because grievance No. WSPF-2010-18936 stated that his meals were canceled because of staff's anti-Muslim bias and desire to retaliate against him.

Henderson's other equal protection claims are his claim about being deprived of prayer oil and his 2012 Ramadan-meals claim. Henderson says that he filed multiple grievances about the deprivation of prayer oil from 2003 to 2015, saying that prison staff systematically discriminated against black Muslims. As I stated above regarding the religion claims, defendants' failure to provide documentation of Henderson's earliest grievances means that

they fail to carry their burden of showing non-exhaustion. So I won't dismiss Henderson's equal protection claims about the prayer oil.

As for the 2012 Ramadan-meal claims, Henderson's grievance about the denial of meals, No. WSPF-2012-17080, simply states that prison officials denied him Ramadan meals. He doesn't say anything about racial or religious discrimination. Henderson isn't required to articulate each legal theory in his grievance, but he does need to "alert[ ] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Henderson's grievance wasn't specific enough to exhaust that type of equal protection claim. It was specific enough to exhaust a class-of-one claim, because one could reasonably infer from Henderson's grievance that prison officials singled him out by denying only him the meals.

### 6. RLUIPA

I take defendants to be arguing that all of Henderson's RLUIPA claims should be dismissed because they relate to incidents of past harm, and Henderson may recover only injunctive relief on these claims. Defendants have a point; the Ramadan-meal claims refer to conduct from 2010 and 2012, and the prayer-oil claims are about conduct from 2010 to 2014. Henderson hasn't been incarcerated at WSPF for several years. Still, defendants' current motion is one limited to the exhaustion defense and was briefed under less formal standards that the ordinary substantive motion for summary judgment in this court. Defendants are free to raise this argument about the RLUIPA claims in a later full-fledged motion for summary judgment. Henderson should be prepared to explain why he believes that the problems he faced at WSPF years ago could reoccur.

CONCLUSION

The following claims survive defendants' motion for summary judgment:

- Henderson's First Amendment free-exercise claim, RLUIPA claim, and equal protection race- and religious-discrimination claims and class-of-one claim regarding the deprivation of prayer oil.

- Henderson's First Amendment free-exercise claim, RLUIPA claim, Eighth Amendment claim, and equal protection race- and religious-discrimination claims and class-of-one claim regarding the 2010 deprivation of Ramadan meals.

- Henderson's First Amendment free-exercise claim, RLUIPA claim, equal protection class-of-one claim, and Eighth Amendment claim regarding the 2012 deprivation of Ramadan meals.

Defendants have filed motions to continue the stay of discovery and the dispositive motions deadline pending a ruling on the exhaustion motion. Dkt. 41 and Dkt. 46. I'll deny the motion to stay discovery; discovery is now reopened. I will grant the motion to stay the schedule, and I will set the following new schedule to give the parties time to conduct discovery and submit dispositive motions:

Disclosure of defendants' expert witnesses: May 4, 2020

Dispositive motions deadline: May 4, 2020

Discovery cutoff: July 22, 2020

Final pretrial submissions and disclosures: July 29, 2020

Pretrial submission responses: August 12, 2020

Final pretrial conference: August 26, 2020, at 2:00 p.m.

Trial: Tuesday, September 8, 2020, at 9:00 a.m.

ORDER

IT IS ORDERED that:

1. Plaintiff Titus Henderson's motion for extension of time to file his response to defendants' motion for summary judgment on exhaustion grounds, Dkt. 32, is GRANTED.

2. Plaintiff's motion asking the court to deny defendants' exhaustion-based summary judgment motion for failure to comply with court rules, Dkt. 42, is DENIED.

3. Plaintiff's motions for default judgment or other sanctions against defendants, Dkt. 33; Dkt. 35; Dkt. 43; Dkt. 45; Dkt. 49, are DENIED without prejudice.

4. Plaintiff's motion for a *Pavey* hearing, Dkt. 48, is DENIED.

5. Defendants' exhaustion-based motion for partial summary judgment, Dkt. 24, is GRANTED in part.

6. Defendants' motion to continue the stay of discovery, Dkt. 41, is DENIED as moot.

7. Defendants' motion to stay the schedule, Dkt. 46, is GRANTED. The current schedule and trial date are STRUCK and a new schedule is set as detailed above.

Entered March 10, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge